UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DANIEL DAVILA III, DANIEL DAVILA FAMILY LIMITED PARTNERSHIP, LUCY DAVILA and JOE PACHUCA,<br><br>*Plaintiffs*,<br><br>v.<br><br>DK PARTNERS PC, STEVEN KANGAS, BRIAN SIMMONS, and RYAN PARKS<br><br>*Defendant*. | Civil Action No. 1:23-cv-883<br><br>JURY DEMAND |

## ORIGINAL COMPLAINT

Plaintiffs Daniel Davila III, Daniel Davila Family Limited Partnership, Lucy Davila and Joe Pachuca, by and through their attorney, complain of Defendants DK Partners PC, Steven Kangas, Brian Simmons, and Ryan Parks and allege as follows:

**I.      JURISDICTION AND VENUE**

1.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 as Plaintiffs Daniel Davila III, Lucy Davila and Joe Pachuca are alleging claims of racial discrimination under 42 U.S.C. §§1981 and 1983.

2.      Venue is proper in under 28 U.S.C. § 1391 (b)(1), (2) as all Defendants reside in this judicial district and it is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

**II.      THE PARTIES**

3.      Plaintiff Daniel Davila III is an individual residing in Travis County, Texas.

4.      Plaintiff Daniel Davila Family Limited Partnership is a Texas partnership of which Daniel Davila III is the General Partner.

5. Plaintiff Lucy Davila is an individual residing in Travis County, Texas.

6. Plaintiff Joe Pachuca is an individual residing in Travis County, Texas.

7. Defendant DK Partners PC is a Texas professional corporation with a principal place of business at 6504 Bridge Point Parkway, Suite 250, Austin, Texas 78730 and may be served through its registered agent, Steven Kangas at 6504 Bridge Point Parkway, Suite 250, Austin, Texas 78730.

8. Defendant Steven Kangas is an individual believed to be residing at 7700 Orisha Drive, Austin, Texas 78739 and may be served at that address, at 6504 Bridge Point Parkway Suite 250, Austin Texas 78730 or wherever he may be found.

9. Defendant Brian Simmons is an individual believed to be residing at 2308 Champions Corner Drive, Leander, Texas 78641 and may be served at that address, at 6504 Bridge Point Parkway Suite 250, Austin Texas 78730 or wherever he may be found.

10. Defendant Ryan Parks is an individual believed to be residing at 3909 Dry Creek Drive, Austin, Texas 78731 and may be served at that address, at 6504 Bridge Point Parkway Suite 250, Austin Texas 78730 or wherever he may be found.

### III.   FACTS

#### A. Davila's Departure From DK Partners, PC

11. Plaintiff Daniel Davila III ("Davila") was a founding member of Defendant DK Partners PC and, at the time of his departure, owned 55% of the shares of the company.

12. On July 15, 2019, pursuant to the DK Shareholder Agreement ("Agreement") PC-6.3 Transition Policy, Davila provided written notice of his intent to relinquish his equity position in the company "on or around my 65th birthday or 07/18/2022." ("the Notice") **Exh. 1;** *see* **Exh. 2 for PC-6.3.**

13. This notice engaged the Transition Policy and the calculation of Davila's Retirement Benefits (PC-5.1) and Retirement Vesting and Payouts (PC-5.2). **Exhs. 3 and 4.**

14. A key component of the process, the development of a Transition Plan, was to be completed within 30 days of receiving the Notice. It took Defendants over a year to formulate the transition plan. **Exh. 5**. The calculations of Davila's retirement benefits, vesting and payouts was provided in May 2022. **Exh. 6**.

15. Between July 2019 and the time of Davila's ultimate departure from the company in July 2022, a number of disagreements arose between Davila and Defendants Kangas and Simmons regarding, among others, Davila's transition, the management of the company, tenant issues, stockholder rights, employment issues, and the announcement of Davila's departure from the company. *See* **Exh. 7**.

16. These disagreements resulted in multiple correspondences between Davila and Defendants Kangas and Simmons and included correspondence involving legal counsel.

17. At the time of his departure from the company, Davila was to be paid $386,236.44 for repurchase of his stock interest in sixty (60) equal monthly payments, with the balance accruing interest and $1,509,833.88 in Vested Retirement Payouts in one hundred twenty (120) equal monthly payments with no interest. *See* **Exh. 6 at 9**.

18. As of the time of this filing, Davila has only been paid nothing for the repurchase of his stock and none of his Vested Retirement Payouts.

19. After leaving DK Partners, Davila has been paid $62,605.00 which was classified as $7,000.00 interest and $55,605.00 of profit distribution.

20. Additionally, Davila is due approximately $107,380.00 for retained profits of DK Partners from 2021 and 2022. Davila was taxed on this amount from the Partnership's distributable income.

### B. DK Partners PC Owes Past Due Rents To Daniel Davila Family Limited Partnership

21. Plaintiff Daniel Davila Family Limited Partnership ("Davila Family") owned the building where DK Partners PC was previously located at 1301 S. Capital of Texas Hwy., Austin, Texas 78746.

22. DK Partners PC leased Suite C-200 from Davila Family and occupied the space as a holdover tenant from the end of its lease May 31, 2019 until July 18, 2022. **Exh. 8**. Despite multiple attempts to negotiate a new lease, DK Partners never agreed to a new lease. Under the clear terms of the Commercial Lease, at paragraph 22, "Rent for any holdover period will be 150% of the base monthly rent plus any additional rent calculated on a daily basis and will be immediately due and payable daily without notice or demand."

23. DK Partners never had an open meeting of all shareholders including Mr. Davila to discuss vacating the space or relocating its offices.

24. At the time of DK Partners' departure from the building, the company owed Davila Family $496,353.66 in past due holdover rent. **Exh. 9**.

25. In addition, the Defendants vandalized the premises and left them in shambles causing the office to have to be shut down for renovations resulting in DK Partners forfeiture of its security deposit.

### C. Racial Discrimination By DK Partners, Kangas and Simmons

26. Plaintiffs Daniel Davila III, Lucy Davila and Joe Pachuca are each Hispanic.

27. Daniel Davila III was a founding partner of DK Partners PC and, at the time of his departure, owned 55% of the shares of the company.

28. Lucy Davila was a part-time contract employee of DK Partners PC from the fall of 2016 until March 2022.

29. Joe Pachuca was an employee of DK Partners PC from January 2018 through February 2022. Mr. Pachuca was hired by Daniel Davila III as Mr. Pachuca was a bilingual CPA, a skill the partnership lacked, with ten years of experience and brought with him a successful book of business. At the time he was hired, Mr. Pachuca had nine years of tax experience and was led to believe he would be made Tax Partner of DK Partners PC.

30. From the time Defendants Kangas and Simmons joined Davila in DK Partners PC, they engaged in frequent discourteous and hurtful behaviors regarding Plaintiffs' race.

31. Defendants Kangas, Simmons, and later Parks, frequently repeated comments about the fact that Danny Davila, Lucy Davila and Joe Pachuca are from the Rio Grande Valley.

32. At one point, a senior staff member of DK Partners told Mr. Davila, "don't be surprised if you only get a building as payment for your stock," clearly referring to the building owned by Daniel Davila Family Limited Partnership.

33. Daniel Davila III believes Defendants treated him differently during his transition from the partnership and have refused to pay his Stock Repurchase, Vested Payouts and other amounts due him based on his race.

34. Joe Pachuca left a successful CPA firm in the Rio Grande Valley to relocate to Austin and join DK Partners PC based on assurances he received that he would be made Tax Manager and then a partner in DK Partners PC. However, instead of elevating Mr. Pachuca with

his nine years of tax experience to Tax Manager, Defendants instead elevated Jack Dotson, a non-Hispanic CPA with less than four years of experience, to that position.

35. Mr. Pachuca was originally promised equity partnership. This was then changed, and Mr. Pachuca would become a "for profits" non-equity partner until Mr. Davila retired and then would become a 1/3 partner. He would also be required to buy in to the partnership for an "estimated" $200,000 but was never provided any calculation or rationale of the buy in amount.

36. Less than one year before Mr. Pachuca was to become a partner, he was shut out of any input into the partnership agreement which could only be amended by a 2/3 vote of the partners. Further, Mr. Pachuca's future interest as a partner was diluted from 33 1/3% to 25% which essentially shut out any vote Mr. Pachuca would have.

37. Additionally, Pachuca's interest would not vest to 50% until he had achieved 15 years of service and would not fully vest until he reached 20 years of service.

38. Based on these material changes to the partnership offer, his diluted standing if he was to become a partner, and the long delay in vesting of his interest, Mr. Pachuca informed Defendants that he had decided not to join the partnership. *See* **Exh. 10**. Defendants' response was to fire Mr. Pachuca.

39. While Mr. Pachuca was employed, Defendants Kangas and Simmons alleged multiple times that Joe Pachuca was not a suitable candidate for partnership in DK Partners because he was "on Valley Time."

40. Less than six months before Davila's departure from DK Partners, Defendants said that they never wanted Mr. Pachuca to be a partner and they only put up with Mr. Pachuca because of Davila.

41. Within one year of Davila's departure from the partnership, Defendants announced that Kangas would lead the tax department, the position that had previously been promised to Pachuca.

42. Defendants' refusal to make Mr. Pachuca a partner was racially motivated as demonstrated by the repeated statements by senior staff of DK Partners that Pachuca had the "wrong pedigree."

43. Defendants Kangas, Simmons and Parks failed to take any action to reprimand an employee that was continually racially condescending to Lucy Davila, and, at one point, physically assaulted her when the employee tried to physically rip a FedEx envelope from Lucy Davila's arms while yelling at her.

44. Defendants' own actions as well as failures to reprimand or stop others' behavior created a hostile work environment for Plaintiffs based on their race.

IV.   CAUSES OF ACTION

45. All paragraphs above are incorporated as if fully set out herein.

46. Davila asserts causes of action against DK Partners PC, Kangas, Simmons and Parks for breach of contract, breach of the duty of good faith and fair dealing, fraud and/or fraudulent inducement, and tortious interference. Plaintiff Daniel Davila Family Limited Partnership asserts causes of action against DK Partners PC, Kangas, Simmons and Parks for breach of contract and breach of the duty of good faith and fair dealing. Plaintiffs Daniel Davila III, Lucy Davila and Joe Pachuca assert a cause of action against DK Partners PC, Kangas, Simmons and Parks for racial discrimination in violation of 42 U.S.C. §1981.

   A. **Breach of Contract I**

47. All paragraphs above are incorporated as if fully set out herein.

48. Davila and Defendants were parties to the DK Partners PC Shareholder Agreement, a valid and enforceable contract including, among other things, enforceable provisions related to the departure of a shareholder and the Stock Repurchase and Vested Payouts to be made to such a departing shareholder.

49. Davila has fully performed all obligations of a departing shareholder under that Agreement and is not in breach of that Agreement.

50. Defendants have breached the Agreement by failing to timely pay and continually refusing to timely pay Davila his Stock Repurchase, Vested Payouts and other amounts due him.

51. Defendants' actions constitute a breach of the valid and enforceable contract between the parties and this breach is a proximate cause of direct and consequential damages suffered by Davila.

### B. Breach of Contract II

52. All paragraphs above are incorporated as if fully set out herein.

53. Davila Family and DK Partners were both parties to a valid and enforceable contract, namely the Commercial Lease for space at 1301 S. Capital of Texas Hwy., Suite C-200 including an obligation for DK Partners to pay rent.

54. Davila Family has fully performed all obligations under the Commercial Lease..

55. DK Partners PC has breached the Commercial Lease by failing to timely pay past due rents.

56. DK Partner PC's actions constitute a breach of the valid and enforceable contract between the parties and this breach is a proximate cause of direct and consequential damages suffered by Davila Family.

### C. Breach of the Duty of Good Faith and Fair Dealing I

57. All paragraphs above are incorporated as if fully set out herein.

58. All parties assumed obligations and responsibilities to perform under the Shareholder Agreement between them.

59. Davila has fully performed all obligations under the Shareholder Agreement entitling him to full payment of his Stock Repurchase, Vested Payouts and other amounts due him.

60. Defendants' failure to pay these Stock Repurchase, Vested Payouts and other amounts due to Davila unreasonably and unfairly interfered with Davila's right to receive his contractual benefits.

61. Defendants' actions constitute a breach of the implied duty of good faith and fair dealing between the parties and this breach is a proximate cause of direct and consequential damages suffered by Davila.

### D. Breach of the Duty of Good Faith and Fair Dealing II

62. All paragraphs above are incorporated as if fully set out herein.

63. Davila Family and DK Partners assumed obligations and responsibilities to perform under the Commercial Lease between them.

64. Davila Family has fully performed all obligations under the Commercial Lease.

65. DK Partners' failure to pay all rents due under the Commercial Lease unreasonably and unfairly interfered with Davila Family's right to receive its contractual benefits.

66. DK Partners PC's actions constitute a breach of the implied duty of good faith and fair dealing between the parties and this breach is a proximate cause of direct and consequential damages suffered by Davila Family.

### E. Fraud and Fraudulent Inducement I

67. All paragraphs above are incorporated as if fully set out herein.

68. DK Partners PC, Kangas and Simmons made a material misrepresentation to Davila by promising to pay Davila his rightfully earned Stock Repurchase, Vested Payouts and other amounts due him when they knew they would attempt to reduce or eliminate any such payments by making false accusations against Davila claiming he violated the Shareholder Agreement.

69. Defendants' representations of promising to pay Davila were false as Defendants clearly had no intention of ever paying Davila the full value of his Stock Repurchase, Vested Payouts and other amounts due him.

70. Defendants made those promises knowingly or recklessly to induce Davila to agree and knowing that Davila would reasonably rely on that material misrepresentation.

71. Davila justifiably relied on Defendants' misrepresentations to his detriment.

72. Defendants' actions constitute fraud and/or fraudulent inducement which is a proximate cause of direct and consequential damages suffered by Davila.

### F. Fraud and Fraudulent Inducement II

73. All paragraphs above are incorporated as if fully set out herein.

74. DK Partners PC, Kangas and Simmons made a material misrepresentation to Pachuca by promising to elevate him to Tax Manager and then make him an equity partner when

they knew they would attempt to dilute his interest and delay his vesting for an unreasonable period of time.

75. Defendants' representations to Pachuca were false as Defendants clearly had no intention of ever making Pachuca a partner as demonstrated by their statement that they only put up with Pachuca because of Davila.

76. Defendants made those promises knowingly or recklessly to induce Pachuca and knowing that Pachuca would reasonably rely on that material misrepresentation.

77. Pachuca justifiably relied on Defendants' misrepresentations to his detriment. Defendants' actions constitute fraud and/or fraudulent inducement which is a proximate cause of direct and consequential damages suffered by Pachuca.

### G. Breach of Fiduciary Duty

78. All paragraphs above are incorporated as if fully set out herein.

79. Kangas and Simmons, as shareholders of DK Partners, owed Davila a fiduciary duty as Davila was a past majority shareholder of the company.

80. Kangas and Simmons have breached their fiduciary duty to Davila by failing to timely pay his earned Stock Repurchase, Vested Payouts and other amounts due him per the clear terms of the Shareholder Agreement.

81. As a result of the conscious actions of Kangas and Simmons, Davila has been damaged, namely by being deprived of monies he is rightfully owed by DK Partners.

82. Kangas' and Simmons' actions constitute a breach of their fiduciary duty owed to Davila which is a proximate cause of direct and consequential damages suffered by Davila.

### H. Violations of 42 U.S.C. §1981

83. All paragraphs above are incorporated as if fully set out herein.

84. Plaintiff Danny Davila, Lucy Davila and Joe Pachuca are Hispanic.

85. Defendants have refused to pay Plaintiff Danny Davila his earned Retirement Benefits and Vested Payouts because of his race.

86. Defendants wrongfully forced Defendant Pachuca to leave because of his race.

87. Defendants made racial slurs and innuendos regarding Plaintiffs Lucy Davila and Joe Pachuca and failed to correct a hostile workplace where Lucy Davila was subjected to racially motivated condescending treatment from a junior employee.

88. Defendants Daniel Davila III, Lucy Davila and Joe Pachuca all met or were meeting Defendants' legitimate expectations at the time of the adverse actions listed above.

89. Defendants Daniel Davila III, Lucy Davila and Joe Pachuca were treated differently than similarly situated non-Hispanic individuals or employees.

90. Defendants actions were purposefully discriminatory and racially motivated.

91. Defendants' discriminatory acts and practices constitute violations of 42 U.S.C. §1981 which are proximate causes of direct and consequential damages suffered by Plaintiffs.

**V.      ATTORNEYS' FEES**

92. Plaintiffs Daniel Davila III and Daniel Davila Family Limited Partnership are entitled to their reasonable and necessary attorney fees under Tex. Civ. Prac. & Rem. Code §38.001(8).

93. Plaintiff Davila Family is further entitled to its reasonable and necessary attorney fees under the terms of the Commercial Lease.

94. Plaintiffs Daniel Davila III, Lucy Davila and Joe Pachuca are entitled to their reasonable and necessary attorney fees under 42 U.S.C. §1988(b).

95. Accordingly, Plaintiffs request this Court award them all reasonable and necessary attorneys' fees and costs incurred in this case.

## VI. JURY DEMAND

96. Plaintiffs demands a trial by jury.

## VII. PRAYER FOR RELIEF

97. Based on the foregoing, Plaintiffs pray for the following relief:

   a. Actual and compensatory damages;

   b. Exemplary and punitive damages;

   c. Reasonable attorney's fees; and

   d. All such other and further relief to which it may be justly entitled.

THE FOWLER LAW FIRM, P.C.

*/s/ Michael J. Smith*
Michael J. Smith
Texas State Bar No.24037517
3301 Northland Drive, Suite 101
Austin, Texas 78731
Telephone: 512.441.1411
Facsimile: 512.469.2975
Email: msmith@thefowlerlawfirm.com
*Attorney for Plaintiffs*